**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| BRITTANY ALONDRA BOLTINHOUSE,<br><br>Plaintiff,<br><br>v.<br><br>THOM BRODEUR, JKN UNIVERSE, LLC d/b/a THE MISS USA ORG/ MISS UNIVERSE, A BLAIZE PRODUCTIONS LLC, ARIANA BLAIZE, NIC BLAIZE, BDE HC, LLC, & BDE MISS USA, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS', THOM BRODEUR, BDE HC, LLC, & BDE MISS USA, LLC, MOTION TO DISMISS<br><br>Civil Action No. 7:26-cv-00425 |

Defendants, Thom Brodeur, BDE HC, LLC, & BDE MISS USA, LLC, (collectively "BDE Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Amended Complaint (the "Complaint") filed by Plaintiff, Brittany Alondra Boltinhouse, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **PLAINTIFF'S ALLEGATIONS**

Plaintiff was crowned the winner of the Miss North Carolina USA pageant in June 2026 and was scheduled to compete in the Miss USA pageant on August 24-27, 2026. DE 01-1 ¶¶ 69, 71, 81. The Complaint alleges that on August 4, 2026, Plaintiff self-reported to A Blaize Productions LLC, the defendant entity that organized the Miss North Carolina USA pageant ("ABP"), that "a video had surfaced online purporting to depict [Plaintiff] when she was a teenager in an altercation with another teenager." DE 01-1 ¶82.

In addition to the video that Plaintiff self-reported to ABP, the Complaint alleges other online activities by Plaintiff that were "brought to the attention" of ABP though the Complaint does not allege the source of the disclosure. DE 01-1 ¶¶ 87. As alleged in the Complaint, which

includes screenshots of Plaintiff's social media posts, these activities include the following: (1) between 2017 and 2019 Plaintiff published social media posts that used the racial slur "nigga" on at least six occasions, DE 01-1 ¶87; (2) Plaintiff attended and supported President Donald J. Trump's rally on January 6, 2021, DE 01-1 ¶¶ 42-43, 48; (3) Plaintiff characterized President Joseph R. Biden's Proclamation on Transgender Day of Visibility in March 2024 as "blasphemy" and evidence of "moral decay," DE 01-1 ¶ 49; (4) Plaintiff posted about Andrew and Tristan Tate, who were then awaiting trial for human trafficking and rape, stating "they're [sic] mentality is essential to have liberty and freedom," DE 01-1 ¶ 50; (5) Plaintiff endorsed then-candidate Trump for president in 2024, DE 01-1 ¶ 51; and (6) Plaintiff posted a tribute to Charlie Kirk in September 2025. DE 01-1 ¶ 52.

The Complaint alleges that because of these activities, Plaintiff was removed as the 2026 Miss North Carolina USA and was unable to participate in the Miss USA pageant. The Complaint is clear, however, that "[t]his case is *not* about whether Defendants . . . had legal authority to remove [Plaintiff's] 2026 Miss North Carolina USA crown." DE 01-1 Introduction (emphasis in original). Instead, Plaintiff claims the Defendants "maliciously" used Plaintiff's own words and activities, which she admits that she publicly posted on social media, to create a "false public narrative." DE 01-1 Introduction.

As to the BDE defendants, the Complaint asserts that on August 5, 2026, Thom Brodeur revoked the 2026 Miss North Carolina USA title through a public statement on his social media account (the "Brodeur Statement") that included the following language: "The Miss USA organization does not tolerate racism, homophobia, transphobia, nor language that strips any person of their dignity – whoever they are." DE 01-1 ¶ 95. Plaintiff alleges that this statement is defamatory because it "implied" the following: (a) Plaintiff "was racist, homophobic, transphobic,

and a bigot" (b) Plaintiff had "engaged in racist, homophobic, and transphobic misconduct"; (c) Plaintiff "admitted that her words and conduct were racist, homophobic, or transphobic"; (d) Plaintiff had "authored, approved, or adopted a written confession and apology accepting responsibility for such conduct"; and (e) Plaintiff's "removal as Miss North Carolina USA 2026 resulted from her admitted racism, homophobia, transphobia, or bigotry." DE 01-1 ¶ 219-220.

For the reasons set forth below, Plaintiff's Complaint fails to state a claim on which relief can be granted and should be dismissed pursuant to Rule 12(b)(6).

## ARGUMENT

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the Complaint. *Al-Deen v. Trustees of University of North Carolina, Wilmington*, 102 F.Supp.3d 758, 764 (E.D.N.C. 2015). While a district court "should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff," *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), the complaint "must allege enough facts to state a claim for relief that is facially plausible." *Al-Deen* at 764 (internal citation omitted). If the allegations are not sufficient to take the Plaintiff's claims "from conceivable to plausible" then "the complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The requirement to accept all well-pleaded allegations as true does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### I. PLAINTIFFS COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION.

To succeed on a claim for defamation, a Plaintiff must allege that "the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." *Craven v. Cope*, 188 N.C. App. 814, 816, 656 S.E.2d 729, 732 (2008) quoting *Boyce v. Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002)

(internal quotes and citations omitted). North Carolina law recognizes three classes of libel: (1) publications obviously defamatory which are called libel *per se*; (2) publications susceptible of two interpretations one of which is defamatory and the other not; and (3) libel *per quod*, which includes publications not obviously defamatory but when considered with innuendo, colloquium, and explanatory circumstances become libelous. *Daniels v. Metro Magazine Holding Co*., 179 N.C. App. 533, 539, 634 S.E.2d 586, 590 (2006).

Not all statements, even if negative, are actionable as libel. North Carolina courts have recognized that "[i]f a statement cannot reasonably be interpreted as stating actual facts about an individual it cannot be the subject of a defamation suit." *Spirax* at 433 *citing Daniels v. Metro Magazine Holding Co., L.L.C.*, 179 N.C. App. 533, 539, 634 S.E.2d 586, 590 (2006) (internal citations omitted). Expressions of opinion are not defamatory because they do not state actual facts. *Craven v. Cope*, 188 N.C. App. 814, 818, 656 S.E.2d 729, 733 (2008). "Whether a statement constitutes fact or opinion is a question of law for the trial court to decide." *Lewis v. Rapp*, 220 N.C. App. 299, 302, 725 S.E.2d 597, 601 (2012).

### A. The Brodeur Statement is an Opinion.

The Brodeur Statement is not defamatory as a matter of law because it does not state actual facts about Plaintiff. Rather, the Brodeur Statement, which is published in its entirety in the Complaint,[1] contains the following: "The Miss USA organization does not tolerate racism, homophobia, transphobia, nor language that strips any person of their dignity – whoever they are." *See* Exhibit A. The Brodeur Statement does not contain any statement that Plaintiff is a racist, homophobe, transphobe, or bigot.

[1]The copy of the Brodeur Statement in the Complaint is difficult to read. The BDE Defendants have included screenshots of the actual post as Exhibit A.

Even if the Brodeur Statement could be interpreted as an assertion that Plaintiff was racist, homophobic, transphobic, or bigoted, such a statement would not be an actionable statement of fact, but an opinion, as a matter of law. *Turpin v. Charlotte Latin Schools, Inc.*, 390 N.C. 281, 305, 933 S.E.2d 671, 688 (2026). In *Turpin*, the North Carolina Supreme Court drew a distinction between calling someone a racist, which the court categorized as a subjective opinion, and stating that a person committed the underlying racist act, which is a statement of actual fact. *Id.*

The underlying facts in *Turpin* arose from a group of parents challenging an alleged change in curriculum at Charlotte Latin School following the death of George Floyd. *Id.* at 286, 676. After a meeting with parents, the Charlotte Latin administration sent an email to all parents, students, faculty, and staff accusing the Turpins and other parents of stating that "diverse students and faculty have not earned their positions and honors at Latin." *Id.* at 288, 677. The Plaintiffs alleged this statement was false because they had not made that statement or any statements that minority students "were not up to the merit of the school like the white students and faculty." *Id.* at 303, 686-87.[2]

In determining whether the plaintiffs stated a claim for defamation, the *Turpin* Court focused on whether the plaintiffs had made the statements that the school attributed to them rather than whether the statements attributed to the parents were racist. As the *Turpin* Court explained the schoolwide email: "The school did not make a subjective statement of opinion such as "the Turpins are racists." *Id.* at 306, 688. Instead, "[t]he school told its entire community of students, parents, and faculty that the Turpins *said* a specific racist thing." *Id.* (emphasis in original). The

---

[2]Notably, the *Turpin* Court opined, "[o]nce again, we are confronted with a case where the factual allegations 'concern matters that are controversial in contemporary politics' but where the legal issues 'are so time-tested that they border on mundane.'" *Id.* at 675 (describing the complaint as resembling "a press release more than a legal filing" and quoting *Kinsley v. Ace Speedway Racing, Ltd.*, 904 S.E.2d 720 (2024)).

Court then considered, "[t]hat claim has an objective answer: the Turpins either said it or they didn't." *Id.*

This Court must make the same determination. Here, unlike in *Turpin*, the Brodeur Statement does not claim that Plaintiff said a specific racist, homophobic, transphobic, or bigoted statement. And even if it did, the Complaint admits Plaintiff made the posts that she alleges were the basis of the Brodeur Statement. At most, the Brodeur Statement contains subjective opinions that are not actionable under a defamation cause of action in North Carolina. Plaintiff's claim that the Brodeur Statement is libelous fails as a matter of law.

**B. The Complaint Admits Mr. Brodeur's Statements were True.**

In an apparent attempt to plead within the narrow issue addressed by the North Carolina Supreme Court in *Turpin*, Plaintiff claims that she was defamed by assertions in the Brodeur Statement regarding Plaintiff's alleged forthcoming apology. Specifically, Mr. Brodeur state that Plaintiff would be issuing her own statement, that he had seen Plaintiff's statement, and that Plaintiff's statement contained "ownership, accountability, and apology." DE 1-01 ¶ 94. Plaintiff claims that she did not "author, approve, adopt, sign, publish or authorize the proposed statement." DE 1-01 ¶ 214. In short, Plaintiff claims that she was defamed not because of the statements she admits she made but because she was falsely accused of accepting responsibility for, and apologizing for, making those statements. Plaintiff's claim fails as a matter of law because the Brodeur Statement is true, as demonstrated by the allegations in the Complaint.

The Brodeur Statement says Plaintiff would be issuing a statement and that Mr. Brodeur had "seen Brittany's statement." DE 1-01 ¶ 94. The Complaint includes the text of a "Statement from Brittany Boltinhouse" in its entirety. DE 1-01 ¶ 112. The Complaint also alleges that this draft statement, which was allegedly prepared by Nic Blaize, was provided to Mr. Brodeur before

he posted the Brodeur Statement. DE 1-01 ¶ 119 ("This is the statement and purported apology Defendant Thom Brodeur 'had seen' referenced in his above discussed false and defamatory post."). As alleged in the Complaint, the portions of the Brodeur Statement asserting that Plaintiff would be issuing a statement and that Mr. Brodeur had seen such statement were true when the Brodeur Statement was posted. Those statements cannot support a defamation claim because the allegations of the Complaint defeat any claim of falsity.

Plaintiff also challenges as false Mr. Brodeur's characterization of her alleged forthcoming statement as evidencing "ownership, accountability and apology." Putting aside that Mr. Brodeur's opinion regarding the draft statement is not actionable as a matter of law, the language of the draft statement defeats any claim that the Brodeur Statement was false. The Complaint alleges the draft statement made reference to "a fight from teenage years and social media posts I made as a young adult." DE 1-01 ¶ 112. The draft statement further contains the following phrases: (1) "[t]hose words and actions were mine, and I take full responsibility for them"; (2) "[t]o those who were hurt or disappointed by my past words or actions, I offer my sincere apology"; and (3) "our words matter, our actions matter, and leadership requires accountability." DE 1-01 ¶ 112. The Brodeur Statement's description – "There is ownership, accountability, and apology" – truthfully and accurately describes the draft statement that the Complaint alleges Mr. Brodeur reviewed before his post.

Plaintiff's attempt to fit the instant Complaint into the *Turpin* facts fails. In *Turpin*, the dispositive question was whether the plaintiffs had made the alleged defamatory statements that the school attributed to them. Here, however, Plaintiff admits making the statements set forth in the Complaint, so she is forced to rely on an argument that the BDE Defendants falsely claimed she apologized for those statements. DE 1-01 ¶¶ 42-52, 87. Unlike in *Turpin* there is no factual

question about whether the Plaintiff made the statements that allegedly contributed to the "false public narrative." Accordingly, under *Turpin*, dismissal is warranted because Plaintiff admits making the very statements that form the narrative.

## II. PLAINTIFF'S CIVIL CONPSIRACY CLAIM ALSO FAILS AS A MATTER OF LAW.

In North Carolina, civil conspiracy is a derivative claim; it does not stand on its own. *Duffy v. Camp*, 287 N.C. App. 46, 73, 882 S.E.2d 675, 697 (2022). The elements of a claim for civil conspiracy are: 1) "an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way"; 2) actions are taken in furtherance of the conspiracy; 3) resulting in damages. *Id*. at 72-73, 697. Plaintiff's claim for civil conspiracy is based solely upon, and derivative of, her allegations of defamation against Defendants. DE 1-01 ¶ 256. Because Platintiff cannot state a claim for defamation as a matter of law, this Court must also dismiss the count of civil conspiracy against the BDE Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint should be dismissed with prejudice in its entirety as to the BDE Defendants under Federal Rule of Civil Procedure 12(b)(6).

Dated: November 2, 2026

Respectfully submitted,

BUCHALTER LLP

By: /s/ *Heather Howell Wright*
Heather Howell Wright
North Carolina State Bar No. 28874
hwright@buchalter.com
BUCHALTER, LLP
1 Music Cir S. Suite 300
Nashville, Tennessee 37203
Telephone: (615) 986-3718
Email: hwright@buchalter.com

*Attorney for Defendants Thom Brodeur,*
*BDE HC, LLC, and BDE Miss USA, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2026, I filed this document electronically through the Court's CM/ECF system and caused a true and correct copy to be served on all counsel of record by electronic means and/or by other authorized means.

/s/ *Heather Howell Wright*
Heather Howell Wright